### Edward W. Koerber v. Middlesex College et al.

[258 A.2d 572]

No. 1945

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*John A. Burgess,* Montpelier, for plaintiff.

*Paterson, Gibson, Noble & Brownell,* Montpelier, for defendant.

**Barney, J.** The planning of the Middlesex College campus outran the organization of the educational corporation. The architect felt that this happenstance should not bar his compensation for his work, including the preparation of plans and specifications, even though no construction was undertaken. The trial court and the jury essentially agreed with him and he recovered a verdict. The defendant college corporation has appealed.

There is a contract at the center of the controversy. It was executed by the plaintiff as the architect employed, and by Dr. Georges de Nagy representing the "Trustees acting for Middlesex College", on July 29, 1964. Articles of association for Middlesex College Corporation were executed on August 14, 1964, and filed with the secretary of state on August 18, 1964. Based on this time schedule, the defendant college argued that it could not be bound by any contractual obligation entered into by others before the college came into corporate existence. This issue was raised by amended answer and pressed in motions for directed verdicts both at the close of the plaintiff's case and at the end of all of the evidence. It was denied in each instance by the lower court.

Dr. de Nagy was also a named defendant in this suit, assumedly on the theory that under 11 V.S.A. § 264 he would be personally liable as president for contracting to employ

the plaintiff before the articles of association of the college were filed on August 18, 1964. The jury found him not liable, and this determination has not been challenged here. The defendant college did, after verdict, move to have the verdict against it set aside and a new trial granted, or, in the alternative, for a *remittitur* "to an amount reasonably reflecting the evidence as to damages." These motions were also denied below.

The real question here is whether or not the defendant college can be said, by its actions, to have adopted or ratified the contract with the plaintiff. It is undeniable that the execution of the contract preceded the filing of the incorporation papers. Moreover, nothing by way of formal or documented ratification has been advanced in evidence. The plaintiff relies on evidence he claims sufficiently establishes that the corporation accepted the benefits of the contract and therefore may be said, under *Glass* v. *Newport Clothing Co.*, 110 Vt. 368, 375, 8 A.2d 651, to have ratified the contract.

▆ The defendant makes some argument that ratification could not occur until the corporation records showed that all of the organizational steps with respect to electing its full board had been complied with, a circumstance that the defendant claims was deferred a year. But 11 V.S.A. § 45 provides that with the recording of the articles of association with the secretary of state the corporation becomes a legal unit. Although a situation might arise whereby a corporation might be entitled to defend a claim on the ground of its own failure to carry out each of the organizational requirements of its charter and by-laws, in the usual case a legal corporation will be denied the right to avoid obligations to third parties by neglecting some formality in its own organizing procedure. See *Vt. Central R. Co.* v. *Clayes*, 21 Vt. 30, 36.

▆ The court submitted to the jury, as an issue of fact, the question of adoption or ratification by the defendant college of the contract with the plaintiff. The charge, among other things, instructed the jury to hold defendant de Nagy liable on the contract, if it was performed, only if the defendant college had not ratified or adopted it. By its verdicts the jury discharged Dr. de Nagy and held the college liable to

14

the plaintiff. Thus, we have a clear finding of ratification by the jury. Since this verdict is challenged, this Court must look to the favoring evidence to determine whether or not this result has adequate factual support. *Smith* v. *Blow & Cote, Inc.,* 124 Vt. 64, 66, 196 A.2d 489.

It is clear that Dr. de Nagy was the moving force behind the founding of Middlesex College. Through his efforts a group of people, including William J. Ryan, Esquire, Mr. Homer F. Smith and Dr. Townsend Scudder, began, in 1964, to work together to bring the college into being. Dr. de Nagy and Mr. Ryan, later two of the three corporators of the infant college, were already dealing with the plaintiff to the end of having him draw sketches of proposed buildings before the school was organized. This culminated in the contract in evidence.

Publicity about the impending organization of the college was released, and on July 18, 1964, a ground-breaking ceremony was held. Dr. de Nagy announced the appointment of the plaintiff as architect for the college on July 28, 1964, and the release was accompanied by the sketches of proposed buildings furnished by the plaintiff. As has already been noted, the employment contract was dated July 29, 1964, and signed by the plaintiff and by Dr. de Nagy, representing "the Trustees acting for Middlesex College".

Articles of association were prepared and filed with the secretary of state and the town clerk of Middlesex on August 18, 1964. The corporation was formed as a non-profit, charitable organization, so there was no certificate of capital or affidavit for the issuance of stock. Dr. de Nagy, William J. Ryan, Esquire and Keith E. King, Esquire were the corporators. A fund-raising brochure was issued, listing Homer F. Smith as chairman of the fund raising committee, Dr. de Nagy as president of the college, and William J. Ryan, Esquire, as chairman of the board of trustees. Additional trustees named were Dr. Townsend Scudder, Dr. Paul M. Descouzis, Howard E. Armstrong, Esquire, Mr. Saul Zaetz and Mr. R. Gregory Belcher. The plaintiff was described as the "engaged" architect.

The plaintiff had been, and continued, working on the project, advising and consulting with de Nagy, Smith and Ryan. Minutes of meetings of the trustees, read into evidence, demonstrated that in the fall of 1964 the board was fully

aware of the contract with the plaintiff and the work being done under it. With plans and specifications for the first proposed construction complete at the end of 1964, the plaintiff contacted Mr. Ryan for a list of general contractors to whom invitations to bid might be sent. The list was provided, and in January of 1965 the plaintiff travelled to Montpelier with copies of the plans and specifications for furnishing to prospective bidders through Mr. Ryan's office. Time for bidding was extended, and the bids were finally opened in Mr. Ryan's office. Two bids were received, one of $689,000 and one of $844,000. The project bid upon involved essentially two buildings, one a dormitory-classroom complex, and the other a gymnasium-library structure.

The buildings were not built, and the evidence makes it clear that this was due to the almost complete failure to raise building funds. At no time was any dissatisfaction with his work ever expressed to the plaintiff, nor was he ever instructed to terminate the work he was known to be doing. The trustees shared his understanding that this work was being done for the college. The inference of ratification is clearly justified from the evidence, and, indeed, there is nothing in derogation of such a conclusion. The jury's determination in this particular is fully supported. *Glass* v. *Newport Clothing Co., supra,* 110 Vt. 368, 375, 8 A.2d 651.

In seeking to recover the value of the architectural services rendered, the plaintiff first made claim under the pertinent provisions of the contract. Later, before trial, by amendment, he was allowed to add a ground for reimbursement based on the reasonable value of his services. At the close of all the evidence the defendant college sought to require the plaintiff to elect his ground of recovery, but the court denied the motion.

■  The contract provided:

Should finances not permit proceeding with the construction of any facilities for which working drawings are provided by the Architect, the Architect is to be given a reasonable indemnification for his services and out-of-pocket expenses incurred in preparing such drawings.

The defendant college leaned heavily on a claimed linguistic distinction between "reasonable indemnification" and "reasonable value of services", resisting the latter as an implied term of the contract. But the trial court took the position that the recovery proper under the contractual provision was, as to this contract, identical to proper recovery under the amended count. We sustain this view as to the substantive meaning of the contract.

■ The charges to be recovered being for professional services, expert evidence was put before the jury from a practicing, registered architect as to the measure of a reasonable fee in circumstances where plans were prepared but the proposed building was not built. This testimony was properly in the case for the use of the jury in arriving at damages under the rule of *Richardson* v. *Persons,* 116 Vt. 413, 415, 77 A.2d 842, authorizing witnesses to give their opinion as to the value of services rendered by members of their own profession. Moreover, on this same issue of damages, the trial court charged, without objection, that the plaintiff's measure of recovery was the fair and reasonable value of the professional services rendered, based on the evidence as to customary charges in the profession. The defendant has not established a basis for reversal on the issue of damages.

■ The defendant college itself sought inclusion of an implied term in the contract in another connection. It argued that there was an understanding, unnoted in the contract, that there would be a cost limitation on the first stages of construction of $350,000. From this it is argued that with the lowest bid almost double that limitation, that it amounted to such a failure to conform to this understanding that the plaintiff ought not to recover at all, under *Goodrich* v. *Lash,* 121 Vt. 15, 19, 146 A.2d 169. But the evidence on this issue was equivocal, and there was much evidence in the case that the limitation, if it ever amounted to that, was abandoned by both parties when construction plans were accelerated and expanded. The issue was controverted, and for the jury. There is evidence to support their finding in favor of the plaintiff, and we cannot, therefore, overturn it. *Banker* v. *Dodge & Hemmings,* 126 Vt. 534, 537, 237 A.2d 121.

*Judgment affirmed.*