**Richard Herbert v. Gael Boardman, John Alexander, and Automotive Activities, Inc.**

[349 A.2d 710]

No. 183-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed December 2, 1975

*Donald E. O'Brien,* Burlington, for Plaintiff.

*Joseph F. Obuchowski* of *Ewing & Spokes,* Burlington, for Defendants.

**Larrow, J.** All of the parties to the action below have appealed the findings and judgment order, the plaintiff asserting his recovery to be too little and the defendants claiming he is entitled to none at all, or, if any, against the corporate defendant only. A counterclaim raised below was denied but no error in this respect is briefed.

██ As will later appear, reversal and remand is required in any event because the trial court, when it amended its original findings, failed to amend its judgment order to correspond therewith. The issues involved, however, are presented clearly enough for resolution without the formality of intermediate remand.

Plaintiff Herbert had been for some time the president and sole owner (apart from qualifying shares) of European Auto, Inc., a Vermont corporation. As of December 20, 1971, the corporate status was unsound, and there was out-of-trust indebtedness to the Chittenden Trust Company amounting to $40,865.05. A trade term, this signifies money which should have been paid the bank under its financing agreement when financed cars were sold, but which had not been so paid. At the instance of the bank, two savings accounts had been established as collateral security for this indebtedness, one of $20,000 which plaintiff had borrowed from a friend, and one of $3,000 which came from corporate funds. Although the parties stipulated that these deposits were security for the loan, the court variously referred to them in its findings as "security deposits" and as being "in escrow as security for payment." The difference in nomenclature would not ordinarily be significant, but the trial court, from its judgment, evidently concluded that the result of this arrangement was to make the indebtedness to the bank a net figure resulting from subtracting the security deposits from the overall out-of-trust indebtedness. Doing so, as will appear, reduces by the amount of the deposits the indebtedness assumed by the defendants under the sale agreement.

The agreement in question was executed between the three individual parties on December 20, 1971. In extremely rough form, it was prepared and typed by defendant Boardman, who had previously obtained a dealer franchise from BMW Motors to sell BMW automobiles in the name of Automotive Activities, Inc., even though that corporation had not been formally organized. The franchise had previously been with European Auto, Inc. In substance, the agreement listed the liabilities to be assumed by the new corporation and the assets it was taking over, the liabilities "assumed" by European Auto, Inc., and provided that the new corporation would issue in exchange 20% of its corporate stock to the plaintiff, not to be sold or transferred without 100% approval of all stockholders. Defendant Alexander was to receive 20% of the stock and defendant Boardman 60%. The validity of the restrictive provision on stock transfer is not here in issue; the stock has never been issued to the plaintiff. On February 1, 1974, 25 shares issued to Boardman and 25 shares to Alexander.

Of paramount significance here, appearing under the listing of items assumed by Automotive Activities, Inc., in the December 20, 1971, agreement, is the phrase:

> Also will agree to pay the Chittenden Bank the out-of-trust amount on a futures basis (formula to be negotiated with bank).

And, in a later paragraph, appears a further provision relating to liabilities which European Auto, Inc., agrees to "assume." Since they were already owed by that corporation, the term, used by a layman, is construed as a retention, rather than an assumption, of liability. No party seems to question this, and the relevant language is:

> European Auto, Inc., agrees to assume the liabilities as follows: . . . any money due employees, friends, business associates either personal or against the corporation. All liabilities, listed and unlisted other than those listed above.

In June, 1973, defendants fired the plaintiff, who had been employed as service manager. The court found him blameless under the agreement, and dismissed defendants' counterclaim. This dismissal is not here challenged.

In October, 1973, the defendants, who either individually or as a corporation had been making periodic payments to the bank on a per car basis, stopped making these payments without notice to plaintiff. At that time, they had paid off $18,174.70 on the out-of-trust indebtedness, plus some interest. On February 5, 1974, the bank applied the security deposits with accrued interest (totaling $26,513.86) to that indebtedness, leaving an unpaid balance of $1,185.58. This last amount the court found to be the joint and several liability of the defendants to the plaintiff, by an amended finding, although it did not amend its original judgment order providing only for stock issuance. All parties have appealed.

Apart from the obvious error in the judgment order, the plaintiff here contends that he is entitled to an addition to his monetary judgment equal to the amount of the security deposits applied by the bank, with interest since date of this application. The defendants, citing no cases, claim that the sale of substantially all the assets of European Auto, Inc., was invalid in the absence of stockholder action under 11 V.S.A. § 2002; that the agreement was only "an offer to agree in the future on some arrangement with the bank"; that the agreement was incomplete, requiring parol evidence they were precluded on trial from adducing; that there was lack of consideration; that they were not obligated beyond the amount of out-of-trust debt reduced by the security deposits; and that the individual defendants are not personally liable because the agreement refers repeatedly to the corporate defendant and nowhere specifically states that the individual defendants are so liable. We hereinafter treat all of these claims in the order above presented.

■ Plaintiff's claim of error by the trial court is simply put. He says that the agreement, by its terms, was an undertaking by the defendants to pay the out-of-trust balance then due the Chittenden Trust Company, so plainly and clearly put as to leave no room for construction or interpretation. With that debt stipulated in amount, and no dispute as to what defendants actually did pay, he says his judgment should be for the difference, not just the amount remaining unpaid af-

ter the bank elected to apply the savings accounts which it held as additional security. We agree.

■ We cannot but believe that the reference by the trial court to these accounts as "escrow" was inadvertent, particularly when in other parts of the findings they were correctly characterized as security deposits. The agreement, drawn by one of the defendants, clearly referred to the "out-of-trust amount", not to that amount less the deposits in question. The arrangement with respect to these did not constitute an escrow, but was more in the nature of a pledge, since there was no third party involved to determine when rights accrued to the bank. Cf. 28 Am.Jur.2d *Escrow* § 12, at 19, and cases there cited. Both the indebtedness and the accounts continued to bear interest, paid by the defendants for a period and accrued by the bank on the deposits. The agreement as drawn was plainly one to pay the described debt to the bank, not that amount less any security for it the bank might have. Where the intent is clear and the language unambiguous, the law presumes the writing to contain the whole agreement, and takes the understanding to be that which the agreement declares. *Economou* v. *Vermont Electric Cooperative*, 131 Vt. 636, 313 A.2d 1 (1973); *Stevens* v. *Cross Abbott Co.*, 129 Vt. 538, 545, 283 A.2d 249 (1971). Plaintiff's claim of error must be sustained, and the judgment below revised accordingly. There is no inconsistency with the other quoted language about money due friends and business associates, to be "assumed" by European Auto. It is undisputed that plaintiff had borrowed from a friend the larger amount held by the bank in security deposit, and was liable to that person in that amount. He remains so liable, and makes no claim that the defendants have any responsibility with respect to that indebtedness.

■ Defendants' claim that the contract is unenforceable as to them under 11 V.S.A. § 2002 could well be dismissed as inadequately briefed. Beyond that, it borders on the frivolous. That section and those following apply as defendants claim to the sale or transfer, as here, of all or substantially all of the corporate assets. But they are, without question, simply a mechanism whereby a stockholder in disagreement with such a course of action may register protest and take action to protect his rights. Even if these defendants had any claim at all

to participation in the rights of a minority stockholder of European Auto, Inc., something not contemplated by the statute, they would have no standing here because no such minority stockholder existed. The plaintiff was without dispute the sole owner of the corporation in question; he, not they, is afforded the statutory protection.

Defendants' only citation of authority in their brief deals with their claim that the agreement here was not a present agreement but "an offer to agree in the future on some arrangement with the bank." They cite a recognized text for the proposition that

> If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called "contract to make a contract" is not a contract at all.

1 A. Corbin, Contracts § 29, at 85 (1963).

The general soundness of this principle is not questioned, but it has no application to the instant case. As between the parties here the agreement was definite and certain; the defendants' undertaking was to assume and pay the obligation to the Chittenden Trust Company, upon such terms as they could secure from the bank. This "futures basis" would be implied in any agreement to assume and pay indebtedness, absent a clear stipulation for immediate payment. How and when the payments were to be made was not a concern of the plaintiff so long as his personal liability was not called into play. There was no "contract to make a contract" as between the parties. Simply put, defendants agreed to assume the debt, and retained an option to make their own peace with the bank. The quoted language has no application.

Their claim with respect to proferred and excluded parol evidence fares no better. We do not view the agreement as in any way unclear or ambiguous, and the claim is disposed of by the discussion, *supra*, of plaintiff's claim of error with respect to the amount of his judgment. So is their claim of error in the finding that they are indebted to the plaintiff in any amount, sustainable only if their obligation can be held to

extend solely to the out-of-trust debt less applied security deposits. Even then, by stipulation, the payments as made did not completely discharge the obligation.

The claim of lack of consideration is a novel one indeed. They assert they were precluded from showing that the assets of European Auto were less than its liabilities. The record does not sustain this claim, but on the contrary shows the introduction, on their motion, of the annual corporate report to the Secretary of State for 1971, showing a financial situation perhaps critical but nonetheless solvent. Apart from this, the proposition for which they contend would require examination by the court of each contract sought to be enforced for a determination that the complaining party received full value or a profit. We do not understand the law of contracts to carry any such guarantee for the contracting party; nor do we perceive how such a rule could be applied to both parties. Absent supporting authority, we give this claim no further consideration. If the argument is intended to go to unconscionability as a defense to specific performance, we can only say that no such offer was made, and that it would have been very difficult to establish in light of the finding that the defendant Boardman had been affiliated with European Auto for some time in a managerial capacity.

Defendants' final claim of error attacks the conclusion of liability of the individual defendants. That liability, they claim, can attach only to the corporation because that is the only promissor referred to in the agreement. Without citation of authority, they assert that the law does not make them individually liable.

Neither party cites us to authorities bearing on this issue. Both could, however, discover authorities tending to support their respective claims. Cf. 18 Am. Jur.2d *Corporations* § 127; Annot., 21 A.L.R.2d 483 *et seq.* (1952). The precise point does not seem to have been determined in this jurisdiction, in the absence of an express adoption of a contract by a later formed corporation. Such adoption, of course, carries with it corporate liability. *Koerber* v. *Middlesex College,* 128 Vt. 11, 258 A.2d 572 (1969). And *Koerber,* although not clearcut authority on the point, seems to approve by implication the rule that where the promoter contracts that a corporation will

be formed, and that it will ratify the contract being made on its behalf, the formation of the corporation and its ratification of the contract will absolve the promoter of personal liability, because this is what he promised and the promise has been met.

In this case, however, the factual situation is different. The contract indeed purported to be on behalf of a corporation to be formed, and contemplated ratification of the agreement after formation. Had all of these steps been taken, the assumed obligations discharged and the promised stock issued, defendants' argument might have some merit. It could then be argued that they had done what they promised and that no personal liability remained. This is not, however, the factual situation. No formal corporate ratification took place, but on the contrary, as found by the court, a repudiation. And, while the transferred assets were accepted under the agreement, the obligations to plaintiff were not discharged. We subscribe to what seems to be the majority rule, that when a promoter makes a contract for the benefit of a proposed corporation, he incurs a personal liability with respect to the transaction in the absence of an agreement with the contracting party that he is not liable, the question of personal liability being dependent on the intention of the parties. In this case the defendants are personally liable, because they did not carry out what they agreed to do through their corporate creature; the corporation is liable because it accepted the benefits of the agreement with full knowledge of the conditions upon which it was entitled to those benefits. We do not reach the question of what might have been the personal liabilities under the facts presented had the corporate stock been issued as promised and a corporate agreement to assume the whole out-of-trust debt been entered into by the corporation with the bank, with a subsequent default on that agreement. More equities might then indeed attach to defendants' contentions, but their present position would simply leave them with all the benefits of the agreement without compliance with the plain provisions governing their own undertakings. To this result we cannot subscribe.

*So much of the amended order of June 16, 1975, as dismisses the counterclaim of the defendants, and directs the is-*

*suance by them to the plaintiff of corporate stock of Automotive Activities, Inc., is affirmed. The cause is remanded with direction that judgment be entered for the plaintiff against the defendants, jointly and severally, in the amount of $27,699.44 with interest thereon from February 5, 1974, to date of judgment, and costs. Plaintiff is to recover his costs in this Court.*