**CENTRAL VERMONT PUBLIC SERVICE CORPORATION,**
Defendant–Appellant,

v.

**Harold HERBERT and Edith Herbert,**
Plaintiffs–Appellees.

**Docket No. 02–5060.**

United States Court of Appeals,
Second Circuit.

Argued June 23, 2003.

Decided Aug. 21, 2003.

James B. Anderson, Ryan, Smith & Carbine, Ltd., Rutland, VT, for Appellant.

Mary P. Kehoe, Lisman, Webster, Kirkpatrick & Leckerling, P.C., Burlington, VT, for Appellee.

Before: WALKER, Chief Judge, STRAUB and POOLER, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Defendant-appellant Central Vermont Public Service Corp. ("CVPS") appeals from the district court's order denying its Fed.R.Civ.P. 60(b)(4) motion. In that motion, CVPS sought relief from a bankruptcy court order permanently enjoining it from pursuing civil claims against the appellees Harold and Edith Herbert ("the Herberts"). After waiting more than four years to challenge the bankruptcy court injunction, CVPS contended that the bankruptcy court order was void for lack of jurisdiction. The district court ruled that the Rule 60(b)(4) motion was untimely and rejected CVPS's jurisdictional argument. Although the district court's untimeliness ruling was in error, we agree that the bankruptcy court at least had an arguable basis for exercising its jurisdiction, and accordingly, we affirm the district court's denial of CVPS's Rule 60(b)(4) motion.

## I. BACKGROUND

In 1993, the Herberts purchased the mortgage and security agreements encumbering Pico Ski Resort in southern Vermont. In 1995, they foreclosed against the resort and incorporated it as "Pico Mountain, Inc." (d/b/a Pico Mountain Resort), which they owned and controlled as shareholders, officers, and directors. In July 1996, the Herberts formed two new entities: Sherburne Pass Mountain Properties,

LLC, to which the Herberts conveyed all of the resort's real estate; and Pico Mountain Operating Company, to which they conveyed all of the resort's personal property assets. Less than one month later, their original company, Pico Mountain, Inc. filed a Chapter 7 petition in bankruptcy, listing no significant assets and $2.7 million in unsecured debts. In December 1996, the Herberts conveyed the resort's real property from Sherburne Pass Mountain Properties, LLC, to Pico Management and conveyed the personal assets of Pico Mountain Operating Company to American Skiing Company. It appears from the appellate record that the Herberts controlled Pico Management, but not American Skiing Company. The December 1996 sales directly and indirectly yielded $2.5 million in benefits to the Herberts, which they did not disburse to the creditors of Pico Mountain, Inc., including CVPS.

In January 1997, CVPS filed a proof of claim in the Pico Mountain, Inc. Chapter 7 proceeding for the cost of the electrical power it had supplied to the resort. Pico Management placed $214,802.79 in escrow to pay the CVPS electrical power bill for utilities. Meanwhile, the trustee of the bankruptcy estate of Pico Mountain, Inc. investigated causes of action against the Herberts for alleged breaches of fiduciary duty toward the debtor. This issue was resolved when the trustee entered into a settlement agreement whereby the Herberts agreed to pay the lesser of $120,000 or thirty percent of the allowed unsecured claims against the debtor. In an adversary proceeding, the trustee sought bankruptcy court approval of the settlement and filed a complaint in that court to enjoin all creditors, including CVPS, from bringing actions against the Herberts "through any derivative or alter ego claim[s] regarding a Pico Mountain, Inc. debt."

On June 16, 1997, the trustee's summons and complaint were served on CVPS. CVPS does not dispute that it failed to enter an appearance or defend against the trustee's action.[1] On October 29, 1997, Bankruptcy Judge Francis G. Conrad approved the settlement and entered an injunction barring creditors of the bankruptcy estate from pursuing any claim, direct or derivative, against the Herberts. *Canney v. A.E.I. Music Network (In re Pico Mountain, Inc.)*, No. 96–10756, Adv. Proceeding No. 97–1036 (Bankr.D.Vt. Oct. 29, 1997). On December 2, 1997, Judge Conrad entered a default judgment against those defendants that had not answered the trustee's complaint, including CVPS, and ordered that the trustee was not required to serve those defendants with copies of the injunction.

CVPS concedes that it learned of the injunction from the Herberts' counsel on December 15, 1997, less than two months after the injunction and less than two weeks after the default judgment was entered against it. Nevertheless, CVPS waited more than four years—until February 13, 2002—to challenge the injunction by filing a Rule 60(b)(4) motion. This attack on the injunction was prompted by a suit filed by the Herberts in Chittenden Superior Court. That suit seeks to reclaim the moneys that Pico Management had placed in escrow, on the basis that the

---

**1.** CVPS asserts that "[i]t is not even clear that [it] ever received the summons, complaint, and pre-trial order the Trustee mailed on June 6, 1997. With 249 defendants served by first class mail, it is possible clerical errors were made." When asked about this assertion at oral argument, CVPS admitted that there is nothing to support it beyond the claim that CVPS's files did not contain the referenced documents when they were searched in preparation for the filing of the complaint in the instant action. In other words, the assertion is pure speculation, and it should not have been made.

settlement and the related injunction barred CVPS's claims for those moneys. In its motion papers, CVPS invoked Rule 60(b)(4)'s provision that "the court may relieve a party … from a final judgment, order, or proceeding [if] the judgment is void," and argued that the injunction was void for lack of subject-matter jurisdiction.

In an oral ruling on June 18, 2002, the bankruptcy court denied the motion as both untimely, citing *Beller & Keller v. Tyler*, 120 F.3d 21 (2d Cir.1997), and without merit because the bankruptcy court had an arguable jurisdictional basis for its order, citing *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir.1986). On October 3, 2002, the district court affirmed the bankruptcy court's denial of the motion on both grounds. CVPS now appeals from the judgment of the district court.

## II. DISCUSSION

### A. Standard of Review

 Generally, we review Rule 60(b) motions for abuse of discretion. *Lawrence v. Wink*, 293 F.3d 615, 623 (2d Cir.2002). However, a district court's ruling on a Rule 60(b)(4) motion is reviewed *de novo* where "there are no disputes over the subsidiary facts pertaining to [the] issue" of jurisdiction. *United States v. Forma*, 42 F.3d 759, 762 (2d Cir.1994). "Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 515 (6th Cir.2001) (Batchelder, J., concurring) (citations and quotation marks omitted); *see also Recreational Properties, Inc. v. Southwest Mortgage Serv. Corp.*, 804 F.2d 311, 314 (5th Cir.1986) ("[T]he district court has no discretion [in ruling on a 60(b)(4) motion], the judgment is ei-

ther void or it is not."). Almost every Circuit has adopted *de novo* review of Rule 60(b)(4) motions, and we know of no Circuit that defers to the district court on a Rule 60(b)(4) ruling. *See Vinten v. Jeantot Marine Alliances, S.A.*, 191 F.Supp.2d 642, 649–50 & nn.12–13 (D.S.C.2002) (collecting cases); *see also Page v. Schweiker*, 786 F.2d 150, 152 (3d Cir.1986).

### B. Timeliness

 At the outset, CVPS argues that the district court erred in ruling that the motion was not timely. Even though Rule 60(b) states that "[t]he motion must be made in a reasonable time," courts have been "exceedingly lenient in defining the term 'reasonable time,' with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be brought at any time.'" *Beller & Keller*, 120 F.3d at 24 (quoting 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.44[5][c] (3d ed.2003)). We conclude that the district court erred in finding that CVPS's motion was untimely.

### C. Bankruptcy Court Jurisdiction to Enter the Underlying Order

CVPS argues that the bankruptcy court's order was void for lack of subject matter jurisdiction. CVPS contends that the bankruptcy court issued a final order in a non-core proceeding without the parties' consent and without a district court's *de novo* review, and that therefore it exceeded its jurisdiction under *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion), and 28 U.S.C. § 157. Where bankruptcy courts have exceeded their jurisdiction in non-core proceedings, we have not hesitated to vacate the bankruptcy court judgment on direct appeal. *See, e.g., Orion*

*Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1102–03 (2d Cir.1993); *see also Cathedral of the Incarnation v. Garden City Co.* (*In re Cathedral of the Incarnation* ), 90 F.3d 28, 34 n. 5 (2d Cir.1996); *Gallucci v. Grant* (*In re Gallucci* ), 931 F.2d 738, 744 (11th Cir.1991).

▮▮▮ However, this case comes to us, not on direct appeal, but on appeal from a denial of a Rule 60(b)(4) motion through which CVPS seeks to overturn a final default judgment. Because "final judgments should not be lightly reopened, [Rule 60(b) ] may not be used as a substitute for timely appeal.... Since 60(b) allows extraordinary relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer,* 793 F.2d at 61–62 (citations omitted). In the context of a Rule 60(b)(4) motion, a judgment may be declared void for want of jurisdiction only when the court "plainly usurped jurisdiction," or, put somewhat differently, when "there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." *Id.* at 65 (internal quotation marks and citations omitted).

CVPS claims that the bankruptcy court's injunction is void under *Marathon* because the court lacked jurisdiction to adjudicate pre-petition state law rights. In *Marathon,* the Supreme Court held that Congress could not constitutionally empower a bankruptcy court, which is not an Article III court, to adjudicate a state breach-of-contract action (based on a pre-petition contract) brought by a debtor against a defendant that had not filed a claim with the bankruptcy court. *See* 458 U.S. at 85, 102 S.Ct. 2858. The Supreme Court observed that "our Constitution reserves for Art[icle] III courts" traditional functions of the judicial power such as adjudicating state breach-of-contract claims like debtor's claim in that case. *Id.*

at 83, 102 S.Ct. 2858. The *Marathon* Court found unconstitutional the Bankruptcy Act of 1978's broad grant of jurisdiction to the bankruptcy courts to adjudicate such state law claims.

In the wake of *Marathon,* Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Amendments"), categorizing "core" and "non-core" proceedings. 28 U.S.C. § 157. Core proceedings are actions essential or basic to the administration of a bankruptcy case, and Congress offered a non-exhaustive list of such actions. 28 U.S.C. § 157(b)(2). In a core proceeding, a bankruptcy court may "enter appropriate [final] orders and judgments." § 157(b)(1). Where a bankruptcy court acts in a non-core proceeding, a final order may be issued only in one of two ways: by the district court after *de novo* review of the bankruptcy court's proposed factual findings and legal conclusions, § 157(c)(1); or by the bankruptcy court with the consent of the parties, § 157(c)(2). *See generally Orion Pictures Corp.,* 4 F.3d at 1100–01. In this case, because the district court did not originally review nor independently adjudicate the bankruptcy court's order enjoining CVPS from pursuing its state claims against the Herberts, bankruptcy jurisdiction can exist only if the proceeding was core or was consented to by the parties.

As noted above, when reviewing the denial of a Rule 60(b)(4) motion to vacate for want of jurisdiction, we consider only whether there is at least an arguable basis for jurisdiction. If so, we will not disturb the judgment on jurisdictional grounds. In this case, we easily conclude that there is, at a minimum, an arguable basis for bankruptcy court jurisdiction, because CVPS's claims are arguably part of the core proceeding before the bankruptcy court and because CVPS consented to the bankruptcy court's jurisdiction.

■ The non-exhaustive list of "core proceedings" in the 1984 Amendments includes: "matters concerning administration of the estate," 28 U.S.C. § 157(b)(2)(A), "proceedings to ... recover fraudulent conveyances," § 157(b)(2)(H), and "other proceedings affecting ... the adjustment of the debtor-creditor ... relationship," § 157(b)(2)(O). The 1984 Amendments clarified that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." § 157(b)(3). Since the 1984 Amendments, "both the Supreme Court and this court have concluded that the *Marathon* holding was a narrow one and have broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments." *See S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir.1995) (citations omitted). "[B]ankruptcy courts are not precluded from adjudicating state-law claims [as core proceedings] when such claims are at the heart of the administration of the bankruptcy estate." *Ben Cooper, Inc. v. Ins. Co. of the State of Pa. (In re Ben Cooper)*, 896 F.2d 1394, 1399 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir. 1991). A finding that a proceeding is core, we have held, may be based upon the "nature of the proceeding," *S.G. Phillips Constructors,* 45 F.3d at 706, and "the ramifications of the dispute on the administration of the estate," *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 994 (2d Cir. 1990).

■ The distinction between core and non-core is somewhat subjective and contextual, and we need not determine whether the injunction in this case was actually part of a core proceeding, because the issue before us is only whether the bankruptcy court arguably had jurisdiction. Here we conclude that the proceeding was arguably core. As part of a settlement by which the Herberts contributed to the bankruptcy estate, the injunction, at least arguably, was "at the heart of the administration of the bankruptcy estate," had significant "ramifications ... for the administration of the estate," or was core because of the "nature of the proceeding."

Moreover, even if the injunction in itself was not part of a core proceeding as defined by the 1984 Amendments, CVPS's claims against the Herberts also were arguably subject to bankruptcy court jurisdiction based upon CVPS's filing a proof of claim in the bankruptcy court in January 1997, almost a year before the bankruptcy court's injunction. Our cases have upheld bankruptcy jurisdiction in what would otherwise be non-core proceedings where the party opposing the finding of jurisdiction has filed a proof of claim. In doing so, we have relied on two theories: (1) the proof of claim transforms litigation into a core proceeding; and (2) by filing the proof of claim, the creditor consents to the bankruptcy court's broad equitable jurisdiction. *See S.G. Phillips Constructors,* 45 F.3d at 706 ("The City, by filing its proof of claim in this case, not only triggered § 157(b)(2)(B) [a listed core proceeding in allowing claims against an estate and estimating claims for the purposes of confirming a plan], but also necessarily submitted to the court's equitable power to resolve its claims."); *see also Cibro Petroleum Prods. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 120 & n. 7 (S.D.N.Y.2001) (citing numerous cases in which filing proof of claim is a sufficient basis for finding the proceeding core); *Pan American World Airways, Inc. v. Evergreen Int'l Airlines,* 132 B.R. 4, 7 (S.D.N.Y.1991) ("When a creditor files a proof of claim it submits itself to the bankruptcy court's equitable power, and the claims, even though arising under state

law, become core proceedings within the jurisdiction of the bankruptcy court."); *cf. Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n. 14, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("[B]y submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims . . . ."); *Orion Pictures Corp.*, 4 F.3d at 1102 (holding "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core"). The foregoing authorities establish that after CVPS filed its proof of claim against Pico Mountain, the bankruptcy court had an arguable basis for jurisdiction to enter its injunction against CVPS.

One could argue that CVPS's proof of claim gave the bankruptcy court core jurisdiction only over CVPS's claims against Pico Mountain, Inc. and not over its claims against the Herberts. However, CVPS's claims against the Herberts are state law claims arising from the Herberts' alter ego relationship with Pico Mountain or the Herberts' liability for Pico Mountain's debts. In the context of cases such as this, we have ruled that the trustee is "the proper person to assert claims . . . . against the debtor's alter ego or others who have misused the debtors property in some fashion," and by extension, we have held that such alter ego claims are core proceedings. *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir.1989). As long as state law permits alter ego tort claims or similar actions, such actions are core proceedings because they "relate[ ] to the property of the estate," and "bring[ ] property into the estate of the debtor," particularly as a proceeding to "recover fraudulent conveyances" under 28 U.S.C. 157(b)(2)(H). *Id.* (internal quotations and citations omitted).

In this case, the trustee's complaint for injunctive relief specifically cited the creditors' "derivative or alter-ego claim[s]," and CVPS now bases its state claims against the Herberts, in part, on Vermont's alter ego doctrine and similar claims of incorporator liability and breach of fiduciary duty, citing *Winey v. Cutler*, 165 Vt. 566, 678 A.2d 1261 (1996), *Hardwick–Morrison Co. v. Albertsson*, 158 Vt. 145, 605 A.2d 529 (1992), *Herbert v. Boardman*, 134 Vt. 78, 349 A.2d 710 (1975). CVPS cannot pursue alter ego liability and similar derivative liability claims against the Herberts under Vermont state law, and, at the same time, assert that core jurisdiction is absent because Vermont does not recognize alter ego or derivative liability. One might argue that the injunction exceeds the bankruptcy court's core jurisdiction for alter ego and derivative liability claims because it protects the Herberts from all claims "of any kind of nature, direct or derivative." *Canney*, Adv. Proceeding No. 97–1036, at 2. However, we need not consider whether there was an arguable jurisdictional basis for the potential reach of the injunction because all of CVPS's state claims are based on alter ego or derivative liability, or relate to the debtor-creditor relationship, and hence are at least arguably part of the core proceedings in the bankruptcy court.

In sum, we conclude that the bankruptcy court did not "plainly usurp[ ]" its power and that there was an arguable basis for jurisdiction. *Nemaizer*, 793 F.2d at 65. Therefore we conclude that the district court properly denied CVPS's Rule 60(b)(4) motion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of CVPS's Rule 60(b)(4) motion.