45 F.3d 702
 32 Collier Bankr.Cas.2d 1425, 26 Bankr.Ct.Dec. 799,
Bankr. L. Rep. P 76,361
 In re S.G. PHILLIPS CONSTRUCTORS, INC., Debtor.
S.G. PHILLIPS CONSTRUCTORS, INC., Appellant-Cross-Appellee,
v.
CITY OF BURLINGTON, VERMONT, Appellee-Cross-Appellant.
 Nos. 1813, 1950, Dockets 94-5009(L), 94-5011XAP.
 United States Court of Appeals,
Second Circuit.
 Argued June 8, 1994.
Decided Jan. 25, 1995.
 
 John J. Kennelly, Rutland, VT (Carroll, George & Pratt, of counsel), for appellant-cross-appellee.
 John L. Franco, Jr., Burlington, VT (McNeil, Leddy & Sheahan, P.C., of counsel), for appellee-cross-appellant.
 Before: WINTER and WALKER, Circuit Judges, and WARD, District Judge.*
 WALKER, Circuit Judge:
 
 
 1
 Debtor in bankruptcy S.G. Phillips Constructors, Inc. ("Phillips") appeals from a final order of the United States District Court for the District of Vermont (Franklin S. Billings, Jr., Chief Judge). On appeal, Phillips, a construction company from which the City of Burlington, Vermont ("the City") is seeking damages in contract, argues principally that the district court erred in holding that the bankruptcy court was without jurisdiction to disallow the claim asserted by the City. Phillips contends that by filing a proof of claim in the bankruptcy proceedings, the City submitted itself to the bankruptcy court's jurisdiction. The City, which had commenced a separate action on the claim in state court, counters that 1) even if the bankruptcy court had jurisdiction pursuant to the Bankruptcy Code, jurisdiction under the circumstances is unconstitutional under Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion); 2) since the district court's decision was based on mandatory abstention, 28 U.S.C. Sec. 1334(c)(2), this court does not have jurisdiction to review the decision to abstain; and 3) Phillip's failure to remove the action from state court to the bankruptcy court left the bankruptcy court without jurisdiction to decide the claims asserted therein.
 
 
 2
 We hold that the determination of the City's claim was a proper exercise of the bankruptcy court's jurisdiction. Furthermore, because the determination of claims is a "core" bankruptcy function, mandatory abstention was not proper. We reverse the district court's order and reinstate the bankruptcy court's decision and order disallowing the City's claim.
 
 BACKGROUND
 
 3
 Debtor Phillips is a general contractor and construction management company. Phillips won a $3.7 million contract to make improvements to one of the City's wastewater treatment plants and, in April 1991, began work on the project. During the course of performance, Phillips made numerous demands to amend the terms of the original contract, including an increase in the payment over and above the contract price. The City refused these demands. On December 11, 1991, Phillips sent notice to the project engineer that it intended to terminate its work on the project.
 
 
 4
 The day following Phillip's notice of intent to stop work, the City filed a complaint against Phillips in Vermont Superior Court that sought damages for Phillip's alleged breach of contract. In its answer, Phillips counterclaimed alleging, among other contentions, breach of contract and wrongful termination of the contract by the City.
 
 
 5
 During its contract dispute with the City, Phillips experienced severe cash shortages resulting in the termination of several other of its contracts. Phillips tried to settle with subcontractors on a number of contracts. As a result of its failure to do so, Phillips was named a defendant in several additional state court lawsuits. Ultimately, on July 1, 1992, Phillips filed a bankruptcy petition seeking Chapter 11 protection. Among the major assets Phillips identified were its counterclaims against the City.
 
 
 6
 Almost two years earlier, in December of 1990, Phillips and the "Sargent Group," which consisted of two principals of a Maine construction company who each owned 25.5% of Phillips stock, had executed an agreement under which the Sargent Group agreed to assume liabilities and acquire rights in Phillips's projects, including the City contract, if Phillips defaulted in payment or performance. On June 3, 1992, as a result of payment defaults by Phillips on subcontracts, the Sargent Group, as Phillips's assignee, executed an agreement with the City to complete the wastewater treatment contract and assume all of Phillips's rights under the contract. Under this new contract, the City and the Sargent group agreed to discharge the claims and counterclaims arising from the disputes over the original wastewater treatment contract.
 
 
 7
 After executing the agreement with the Sargent Group, the City filed a motion in state court on June 9, 1992 to dismiss its claims and Phillips's counterclaims. The Vermont Superior Court granted the motion on July 2, 1992 but later vacated its order after Phillips argued that its Chapter 11 Petition, filed on July 1, had stayed the state court's authority to dismiss the claims and counterclaims. Phillips, however, did not seek to remove the suit from state to bankruptcy court.
 
 
 8
 On September 4, 1992, over two months after Phillips filed its Chapter 11 Petition, the City filed a proof of claim in the bankruptcy court. Phillips responded by filing an objection to the claim on May 3, 1993. Thereafter, the City became immersed in the bankruptcy matter by filing numerous objections; by moving to convert the case from a Chapter 11 to a Chapter 7 case; and, more than ten months after filing its proof of claim, by filing in the bankruptcy court a motion for relief from the stay.
 
 
 9
 On July 15, 1993, the bankruptcy court confirmed Phillips's plan of reorganization. The bankruptcy court dismissed the City's claim on the ground that the agreement executed between the City and the Sargent Group "unambiguously" released any claims by the City against Phillips. Thus, the City was "no longer a party in interest in this case." However, Phillips's counterclaims against the City were preserved. The court explicitly limited its ruling to claims in bankruptcy, stating that "[w]hatever you do in the state court that's another issue." A few weeks later, the bankruptcy court granted the City's unopposed motion for relief from the automatic stay to allow it to proceed in state court, noting that "[i]n light of the Debtor's confirmation this order may not be necessary."
 
 
 10
 The City subsequently appealed the bankruptcy court's dismissal of its claim to the United States District Court. The district court held that the bankruptcy court lacked jurisdiction over the City's claims against Phillips because they were not "core" claims under 28 U.S.C. Sec. 157(b)(2) and were "wholly independent" of the Chapter 11 petition. The district court also rejected the view that in filing the proof of claim the City impliedly consented to bankruptcy jurisdiction since the City was compelled to file its claim or face eradication of its claim in bankruptcy. The district court further concluded that the bankruptcy court lacked jurisdiction under the mandatory abstention rule. Finally, the district court determined that the reorganization plan violated the "absolute priority rule," and therefore the plan was invalid. Consequently, the court vacated the bankruptcy court's order dismissing the City's claim and remanded for further proceedings.
 
 
 11
 This appeal followed.
 
 DISCUSSION
 I. The Bankruptcy Court's Jurisdiction
 
 12
 We turn first to whether the bankruptcy court had jurisdiction to determine the City's claim in the first instance. Phillips contends that the bankruptcy court properly exercised jurisdiction over the City's claim since determination of claims is a "core" bankruptcy function. The City argues that even if the Bankruptcy Code vests jurisdiction in the bankruptcy court to determine its claim, that jurisdiction is unconstitutional under Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion). We conclude that the bankruptcy court had jurisdiction over the City's proof of claim.
 
 A. Core v. Non-Core Claims
 
 13
 The Bankruptcy Code divides claims in bankruptcy proceedings into the categories "core" and "non-core" (or "related"). In re Manville Forest Prods. Corp., 896 F.2d 1384, 1389 (2d Cir.1990). Bankruptcy judges have the authority to "hear and determine all ... core proceedings arising under title 11 ... and may enter appropriate orders and judgments, subject to review under section 158 of [title 28]." 28 U.S.C. Sec. 157(b)(1). With respect to non-core claims, unless the parties consent, the bankruptcy court can only make recommended findings of fact and conclusions of law which are subject to de novo review in the district court. 28 U.S.C. Secs. 157(c)(1) and (2). We think it plain that under the Bankruptcy Code and the overwhelming weight of precedent, the bankruptcy court had "core" jurisdiction over the City's proof of claim.
 
 
 14
 The Bankruptcy Code provides a non-exclusive list of matters that Congress considered to be within the bankruptcy court's core jurisdiction, including the "allowance or disallowance of claims against the estate." Id. Sec. 157(b)(2)(B). In a case closely analogous to this one, we held that when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law. In re Manville, 896 F.2d at 1389-90.
 
 
 15
 The City argues that In re Manville is not controlling because the City filed its claim in state court before the petition was filed, while in In re Manville it was not clear whether a state court action was initiated, much less, when, and the decision appeared to presume that no such action existed. We find this distinction immaterial. Nothing in the Bankruptcy Code suggests that debtors may not file petitions while they have prepetition suits pending against them. Debtors frequently file for bankruptcy protection precisely because a growing number of creditors have brought suit. Indeed, the Code recognizes the prevalence of prepetition state court claims by automatically staying all prepetition actions to provide breathing space and to allow the bankruptcy court to protect its jurisdiction over the debtor's property. See 11 U.S.C. Sec. 362(a); In re Ionosphere Clubs, Inc., 922 F.2d 984, 991 (2d Cir.1990), cert. denied, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). The sole fact that the City's state law claim was filed before its petition has no hearing on whether the claim is characterized as core or non-core when a proof of claim has been filed.
 
 
 16
 Rather, we believe that the determinative factor as to the bankruptcy court's jurisdiction in this case is that the City filed a proof of claim resulting in an adversary proceeding that involved the "allowance or disallowance of claims against the estate." 28 U.S.C. Sec. 157(b)(2)(B). In so doing, the City necessarily became a party under the court's core jurisdiction. See Langenkamp v. Culp, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (per curiam); In re Manville, 896 F.2d at 1389-90; Bedford Computer Corp. v. Ginn Pub., Inc., 63 B.R. 79, 81-83 (D.N.H.1986). Because "[n]othing is more directly at the core of bankruptcy administration ... than the quantification of all liabilities of the debtor," the bankruptcy court's determination whether to allow or disallow a claim is a core function. In re BKW Sys., Inc., 66 B.R. 546, 548 (Bankr.D.N.H.1986).
 
 
 17
 Given our conclusion that determination of the City's proof of claim is a core matter, we can easily dispose of the City's constitutional challenge to the bankruptcy court's jurisdiction. The City claims that the Supreme Court's decision in Marathon, 458 U.S. at 50, 102 S.Ct. at 2858, precludes the bankruptcy judge from exercising jurisdiction over the City's prepetition state law claim against Phillips. In reaching this conclusion, the City misconstrues the holding and scope of Marathon.
 
 
 18
 In Marathon, the Court held that Article III of the Constitution prohibited the bankruptcy court from adjudicating a prepetition claim by the debtor in an adversary proceeding against a nonparty to the bankruptcy because bankruptcy judges "do not enjoy the protections constitutionally afforded to Art[icle] III judges," Marathon, 458 U.S. at 60, 102 S.Ct. at 2866, and the bankruptcy court was not a forum having "the essential attributes of the judicial power." Id. at 87, 102 S.Ct. at 2880.
 
 
 19
 In response to the Supreme Court's decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, which established the core/non-core distinction to which we have referred. In re Arnold Print Works, Inc., 815 F.2d 165, 166-67 (1st Cir.1987) (Breyer, J.). In doing so, Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and intended that the "core" jurisdiction would be construed as broadly as possible subject to the constitutional limits established in Marathon. Id. at 168. Since then, both the Supreme Court and this court have concluded that the Marathon holding was a narrow one and have broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments. See, e.g., In re Ben Cooper, Inc., 896 F.2d 1394, 1399-1400 (2d Cir.), vacated, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), reinstated, 924 F.2d 36 (2d Cir.1991); In re Manville, 896 F.2d at 1389-90; In re Arnold, 815 F.2d at 166; cf. Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 852-53, 106 S.Ct. 3245, 3257-58, 92 L.Ed.2d 675 (1986).
 
 
 20
 In addition, another crucial factor distinguishing Marathon from the present case is that in Marathon, the state common-law claim arose prepetition, but the debtor brought it postpetition in bankruptcy court against a defendant who had not filed a proof of claim and had no other connection with the bankruptcy. See In re Manville, 896 F.2d at 1389. The defendant was thus involuntarily subjected to having the debtor's state law claim against it decided by an Article I judge. It was this combination of circumstances that led the Supreme Court to hold that the defendant was entitled to adjudication of its claims by an Article III court. Id.
 
 
 21
 In the case at bar, however, the creditor became involved in bankruptcy court proceedings by filing its proof of claim in bankruptcy court and thereafter actively litigating in that court. We do not think that anything in Marathon alters the basic principle that the filing of a proof of claim
 
 
 22
 invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.
 
 
 23
 In re Manville, 896 F.2d at 1390 (quoting In re Wood, 825 F.2d 90, 97 (5th Cir.1987) (emphasis added)). Thus, we conclude that the bankruptcy court's determination of the City's claim brought against the debtor Phillips is a core bankruptcy function over which the bankruptcy court has jurisdiction. See In re Pro Mach., Inc., 87 B.R. 998, 1003 (Bankr.D.Minn.1988).
 
 B. Possible Exceptions
 
 24
 The City makes two arguments in support of the district court's order holding that the bankruptcy court's exercise of jurisdiction was improper. Neither, in our view, is viable. First, the City asserts that it never consented to the bankruptcy court's jurisdiction because it filed its proof of claim in a defensive posture. Second, the City claims that the district court properly held that the bankruptcy court was required to abstain from hearing this case under 28 U.S.C. Sec. 1334(c)(2) and that the provision renders the decision unreviewable by this court. We examine each argument in turn.
 
 
 25
 1. Whether the Proof of Claim Was "Defensive."
 
 
 26
 The City relies on the Ninth Circuit's decision in In re Castlerock Properties, 781 F.2d 159 (9th Cir.1986), to argue that when a creditor files a proof of claim under protest in order to avoid losing its rights in bankruptcy, it does not consent to determination of its claims by the bankruptcy court, and it preserves its right to object to the bankruptcy court's jurisdiction. We find this argument unpersuasive.
 
 
 27
 In Castlerock, the creditor had filed a prepetition contract action in state court which was stayed when the debtor filed for bankruptcy. The Castlerock creditor did not file a proof of claim, however; instead it moved for relief from the automatic stay so its state court action could proceed. In response to this motion for relief from stay, the debtor asserted counterclaims against the creditor. The creditor moved to dismiss the counterclaims as inappropriately filed in connection with a motion for relief from stay. After the bankruptcy court denied the creditor's motion to dismiss, the creditor then filed a proof of claim. The bankruptcy court adjudicated the counterclaims and found for the debtor. The district court, however, vacated the bankruptcy court's judgment as well as the automatic stay of the state court proceedings. Id. at 160.
 
 
 28
 On appeal, the Ninth Circuit held that the bankruptcy court did not have jurisdiction to adjudicate the counterclaims against the creditor. The court recognized the "well-settled law that a creditor consents to jurisdiction over related counterclaims by filing a proof of claim," but held that consent could not be found where "the filing of the proof of claim followed the bankruptcy court's assertion of jurisdiction over the counterclaims despite objections from the creditor." Id. at 162. The court found it significant, if not dispositive, that the debtor asserted counterclaims before the creditor filed its proof of claim. Id. at 161-62. Thus, the filing of the proof of claim was a "defensive" maneuver. Id. at 163; see In re BKW Systems, 66 B.R. at 548 (Castlerock involved "a unique situation in which the creditor ... was not given an opportunity to freely elect whether or not to assert a claim in the bankruptcy proceeding.").
 
 
 29
 We need not decide whether we agree with the Ninth Circuit's reasoning because we find the decision in Castlerock inapposite. In Castlerock, the Ninth Circuit found that the bankruptcy court lacked core jurisdiction under Sec. 157(b)(2). Thus, in Castlerock, the issue of the creditor's consent arose because the bankruptcy court could only exercise jurisdiction over the state law counterclaims with the mutual consent of the parties. Id. at 162; see 28 U.S.C. Sec. 157(c)(2); In re TVR of America, Inc., 123 B.R. 159, 162 (Bankr.D.Conn.1991) (bankruptcy court may only exercise jurisdiction over non-core proceedings with the consent of the parties); 1 Collier on Bankruptcy p 3.01[d], at 3-56 (Lawrence P. King et al. eds., 15th ed. 1994) (same).
 
 
 30
 If the City, by relying on Castlerock, is somehow contending that its claim here is non-core, its argument fails. The claim in this case is core, as discussed above, because it falls within Sec. 157(b)(2)(B). If, instead, the City's claim is that consent was required even if the proceeding was core, we must also reject this argument. While under the old Bankruptcy Act of 1898, consent was treated as the basis for bankruptcy court jurisdiction, Jeffrey T. Ferriell, Core Proceedings in Bankruptcy Court, 56 UMKC L.Rev. 47, 75 (1987), under the 1985 Bankruptcy Amendments, the determination that a proceeding is core does not depend on the consent of the parties. Instead, the statutory basis for a bankruptcy court's jurisdiction to issue final orders depends on the nature of the proceeding, 28 U.S.C. Sec. 157(b)(2)(B), i.e., whether it is "at the core of the federal bankruptcy power." Marathon, 458 U.S. at 71, 102 S.Ct. at 287. Even in Castlerock, the party challenging the bankruptcy court's jurisdiction conceded that the court had subject matter jurisdiction. 781 F.2d at 160.
 
 
 31
 Finally, if the City is contending that it did not consent to the bankruptcy court's equitable jurisdiction over it, that claim also fails. Invoking equitable jurisdiction in the bankruptcy context might be analogized to invoking a court's jurisdiction by filing a complaint. The Supreme Court and this court have consistently held that in filing a proof of claim the petitioner submits to the bankruptcy court's equitable jurisdiction. See, e.g., Langenkamp, 498 U.S. at 44, 111 S.Ct. at 331 (per curiam) ("by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power"); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 59 n. 14, 109 S.Ct. 2782, 2799 n. 14, 106 L.Ed.2d 26 (1989) ("by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims...."); In re Manville, 896 F.2d at 1389 ("[b]y filing a proof of claim, [the party] submitted itself to the equitable power of the bankruptcy court to disallow its claim").
 
 
 32
 The City, by filing its proof of claim in this case, not only triggered Sec. 157(b)(2)(B) subject matter jurisdiction, but also necessarily submitted to the court's equitable power to resolve its claims. Again, without deciding the validity of Castlerock, we note that the case at bar remains distinguishable from Castlerock. In the latter case, the creditor: (1) moved for relief from the automatic stay, (2) moved to have the district court withdraw its reference of the claims to the bankruptcy court, (3) continually objected to the bankruptcy court's jurisdiction, and (4) did not file a proof of claim until after all other reasonable measures had failed and the bankruptcy court had taken jurisdiction. In sum, the creditor in Castlerock acted throughout in a manner that was inconsistent with acceptance of the bankruptcy court's jurisdiction. 781 F.2d at 161-62 (The creditor "would not have the filed Proof of Claim if the bankruptcy court had declined jurisdiction over the counterclaims."). Here the opposite is true. The City's first move in the bankruptcy proceeding was to file its proof of claim and it thereafter became deeply involved in the proceedings. It did not file its motion for relief from the stay until ten months later. The record presented to us does not reflect that the City ever moved for the district court to withdraw its reference and remand the claims to state court. Under these circumstances, the City plainly submitted to the equitable resolution of its claims in bankruptcy court.
 
 2. Abstention
 
 33
 The district court held that because the City had a state law action pending in state court when the petition was filed, the mandatory abstention provision, 28 U.S.C. Sec. 1334(c)(2), required the bankruptcy court to abstain in order to allow the state court action to proceed. The City argues that the district court's holding is not only correct, but that Sec. 1334(c)(2) deprives this court of jurisdiction to review it. Section 1334(c)(2) provides in relevant part:
 
 
 34
 Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals....
 
 
 35
 It bears noting at the outset that the abstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance. See In re Texaco, 77 B.R. 433, 438 (Bankr.S.D.N.Y.1987); In re 666 Assocs., 57 B.R. 8, 13 n. 6 (Bankr.S.D.N.Y.1985). To paraphrase, Sec. 1334(c)(2) requires the district court to abstain from hearing a non-core matter which can be timely adjudicated in state court in a previously commenced action. The act of abstaining presumes that proper jurisdiction otherwise exists.
 
 
 36
 While Congress proscribed general review of mandatory abstention, we have recognized limited reviewability of abstention decisions under Sec. 1334(c)(2) to ensure that the statutory requirements prerequisite to mandatory abstention are met. See In re Ben Cooper, Inc., 924 F.2d 36, 38 (2d Cir.), cert. denied, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); cf. Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 351-52, 96 S.Ct. 584, 593-94, 46 L.Ed.2d 542 (1976) (mandamus review of bankruptcy remand orders despite jurisdictional bar permitted to ensure compliance with remand statute).
 
 
 37
 The most obvious limitation on the applicability of mandatory abstention is that it applies only to claims "related to a case under title 11 but not arising under title 11 or arising in a case under title 11"; that is, abstention is only mandated with respect to non-core matters. See In re Mills, 163 B.R. 198, 202 (Bankr.D.Kan.1994); In re Robb, 139 B.R. 791, 796 (Bankr.S.D.N.Y.1992). When a district court abstains from hearing cases involving "core" proceedings, the abstention decision can only be made pursuant to Sec. 1334(c)(1), which leaves abstention to the district judge's discretion. Such decisions are subject to appellate review. In re Ben Cooper, 924 F.2d at 38. Given our conclusion that the determination of the City's claim is a core matter, mandatory abstention under Sec. 1334(c)(2) does not apply. See id. Consequently, the bankruptcy court's exercise of jurisdiction in this case was within its discretion and was therefore proper.
 
 
 38
 We have considered the remaining claims by the City, including that the cram down proceeding was fundamentally unfair, and find them to be without merit.
 
 CONCLUSION
 
 39
 The judgment of the district court is reversed, and the order of the bankruptcy court confirming the reorganization plan is reinstated.
 
 
 
 *
 The Honorable Robert J. Ward, United States District Judge for the Southern District of New York, sitting by designation