**In re The LESLIE FAY COMPANIES, INC., et al., Debtors.**

**Bankruptcy No. 93 B 41724 (TLB).**

United States Bankruptcy Court, S.D. New York.

May 8, 1995.

Weil, Gotshal & Manges by Brian S. Rosen, Prospective Special Labor Counsel, McDermott, Will & Emery by Joel E. Cohen, New York City, for Leslie Fay Companies, Inc.

Wisehart & Koch by Michael Prince, Christopher Runge, Arthur M. Wisehart (on the brief), New York City, for creditors.

*CORRECTED TEXT OF MAY 5, 1995 BENCH RULING ON MOTION TO STAY OBJECTIONS TO CLAIMS* [1]

TINA L. BROZMAN, Bankruptcy Judge.

I.

Terminated by The Leslie Fay Companies, Inc. (the "debtor" or "Leslie Fay") some two years prior to the filing of its chapter 11 petition, Anthony Gill, Raymond J. Terwilliger, and Jacob V. Falbaum all agreed to sign general release agreements, acknowledging that they had certain rights under various state and federal employment discrimination laws and other applicable laws and affirming their intention to waive and release these rights under such laws in exchange for additional termination benefits to which they were not otherwise entitled. After execution of the agreements, Leslie Fay paid out more than $100,000 in severance and medical benefits to Terwilliger to which he was not otherwise entitled, $17,000 to Falbaum, and $25,000 to Gill. The claimants all confirmed in their own handwriting that they had read the release and termination agreements, and that they entered into and signed such agreements knowingly and voluntarily with full knowledge of what they mean and intending to be bound by them.

Gill, Terwilliger, and Falbaum subsequently filed age discrimination charges with the Equal Employment Opportunity Commission (the "EEOC charges"), seeking damages of $15,860,000, $18,575,000, and $9,608,000, respectively. In these charges, the claimants alleged that Leslie Fay pursued a master plan of age discrimination which included discriminatory acts when the claimants were terminated and again when they were denied reinstatement subsequent to the filing of the chapter 11 petition. The EEOC dismissed all of the charges on the basis that the releases were given voluntarily and precluded recovery on any claims otherwise arising out of the terminations. After the decision of the EEOC, the claimants filed proofs of claim against Leslie Fay seeking the same large sums as before the EEOC and thereafter commenced an action in the United States District Court for the Southern District of New York against certain present and former officers and directors of Leslie Fay (*Falbaum v. Pomerantz, et al.*, 94 Civ. 5503), also for the same relief. Conspicuously absent from that complaint is Leslie Fay itself, presumably because the plaintiffs recognized that they could not sue Leslie Fay without first obtaining relief from the automatic stay of section 362 of the Bankruptcy Code. In both the proofs of claim and the *Falbaum* action, the claimants have alleged that their releases were obtained through fraud and coercion, under false pretenses, and in furtherance of unlawful discriminatory acts. As before the EEOC, all three maintain that they were subject to further acts of discrimination when they were denied reinstatement to new positions. The remaining defendants in the *Falbaum* action (one has already been dismissed) have moved to dismiss the complaint on the theory that they cannot be personally liable to the plaintiffs but can be liable only in their corporate capacities. The district court has reserved decision on that motion.[2]

▮ Not surprisingly in light of the size of the proofs of claim, which are among the largest unsecured claims interposed against the estate, and in light of the response of the EEOC to the charges filed by the claimants, Leslie Fay objected to the three proofs of claim. The claimants now seek an open-ended "adjournment" of the hearing on Leslie Fay's objections, which is really not an adjournment at all but a stay, until the *Falb-*

---

1. When this decision was orally rendered, I indicated to the parties that I was reserving the right to make necessary corrections and publish it.

2. It should be noted that if the defendants are correct, then the action cannot proceed because it would be an action against Leslie Fay itself and therefore violative of the automatic stay.

*aum* action is resolved, either through Judge Cedarbaum's dismissal of the complaint, or, if the complaint survives, through trial by a jury. This relief is warranted, they say, because the resolution may have a beneficial effect on the amount available for satisfaction of claims in this court, because judicial resources would be preserved and because inconsistent rulings would be avoided in their civil suit in which they assert a right to trial by jury. This request for relief was amplified by letter requesting that I adjourn even the request for a stay until Judge Cedarbaum rules on a newly-filed request by the claimants to withdraw the reference pursuant to 28 U.S.C. § 157(d) as to the disputed proofs of claim. I declined to grant that request, as I am permitted to do, the rules specifically providing that a request to withdraw the reference does not stay matters before the bankruptcy judge. Fed. R.Bankr.P. 5011; *see Priest v. Interco Inc.* (*In re Interco Inc.*), 135 B.R. 359 (Bankr. E.D.Mo.1991).[3] Both sides agree that the underlying issue regarding the debtor's liability is not ripe for adjudication today inasmuch as there are evidentiary issues vis-à-vis the legitimacy of the releases executed by the claimants.

### II.

■ We begin with the contention that this motion for a stay is beneficial to the overall creditor body in that it may increase the amount which will be available to creditors other than the claimants. Were the disputed claims in small amounts, and were there no danger of Leslie Fay's being liable to indemnify its officers and directors, there might be some merit to the argument. But given the size of the claims, which the individual defendants are unlikely to be able to satisfy, and given the real possibility that even if the defendants can stand for the judgments Leslie Fay may be required to indemnify them, it is readily seen that the asserted benefit is more apparent than real. Moreover, as I indicated in my last published decision in this case, Leslie Fay is at a

critical stage in its reorganization case when it is imperative that it emerge promptly from chapter 11. *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 538 (Bankr.S.D.N.Y.1994). To that end, Leslie Fay is attempting now to formulate its plan and to sell off certain of its divisions. Because these claims are so large, they may stand as a formidable impediment to the plan effort, as discussed below.

■ We turn next to the argument that hearing the objections will abridge the claimants' asserted rights to trial by a jury. Whereas the claimants may have a right to a jury trial as against the individual defendants if they are correct in their supposition that the officers and directors can be held liable in their personal capacities, there is no right to a jury trial as against Leslie Fay. Having made the decision to participate in the equitable reordering of Leslie Fay's estate by filing proofs of claim, the claimants submitted themselves to the court's equitable jurisdiction to disallow those claims and waived the right to trial by jury of the liability asserted in those proofs of claim. *Katchen v. Landy,* 382 U.S. 323, 337, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966); *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (per curiam); *Granfinanciera v. Nordberg,* 492 U.S. 33, 59 n. 14, 109 S.Ct. 2782, 2799 n. 14, 106 L.Ed.2d 26 (1989); *see also S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702 (2d Cir.1995) (determinative factor as to the bankruptcy court's core jurisdiction to adjudicate city's claim was that the city filed a proof of claim) (citing 28 U.S.C. § 157(b)(2)(B)). This power to allow or disallow claims includes "full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based. This is essential to the performance of the duties imposed upon [the court]." *Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1914). Not only is the adjudication of the claims objections within my equitable jurisdiction, but as indi-

---

**3.** There is another point to be made here. Litigation by letter is wholly inappropriate. Counsel's letter contained not only a request for an adjournment, but asked for appointment of a chapter 11 trustee based on unsubstantiated vilification of the debtor's management. Given that the request followed none of the applicable procedural rules, I have ignored it.

cated in *S.G. Phillips Constructors, Inc.*, 45 F.3d 702, pursuant to 28 U.S.C. § 157(b)(2), these disputes are core.

■ Indeed in *Katchen*, much like here, the creditor argued that the bankruptcy court should have stayed the proceedings before it and directed the trustee to commence a plenary suit in another court in order to preserve the creditor's right to a jury trial in the preference action, which had been asserted as a defense to the creditor's proof of claim. The Court observed that accepting the creditor's argument would force the bankruptcy court to suspend its claims-allowance proceedings whenever a preference claim were asserted against a creditor, a result that would undermine the statutory bankruptcy scheme. The Court ruled that the bankruptcy court could resolve the equitable claims presented to it, even if their determination would be dispositive of what would otherwise be a legal claim. 382 U.S. at 339–40, 86 S.Ct. at 478. Moreover, as the Second Circuit observed recently, there is nothing inherently wrong with a system which requires one who invokes the equitable jurisdiction of the bankruptcy court so as to share in an estate to thereby consent to the equitable adjudication of the proof of claim by that same court. *First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.)*, 937 F.2d 833, 840 (2d Cir.1991).

■ Resolution of the dismissal motion in the *Falbaum* action will not advance the adjudication of the proofs of claim. As the District Court has determined, the dismissal motion cannot deal with the issue of the validity of the releases, which is central to the allowability of the proofs of claim. Whether or not the individual defendants, as a matter of law, can have any liability on the claims asserted will not speed the adjudication of the proofs of claim either, for no matter the result, the claims against Leslie Fay asserted in the proofs of claim will subsist. If the motion to dismiss is denied, the matter would not proceed to trial for a substantial period of time, probably long after Leslie Fay's intended promulgation of a plan of reorganization. Consequently, even assuming that Leslie Fay can promulgate a plan without the claims being resolved, the ability of the debtors to give any meaningful disclosure to the unsecured creditors of the claims in their class will be adversely affected if, as is so often the case, that class receives a fixed distribution rather than a percentage distribution on each claim. Further, the overhang of such large claims may delay the ability of Leslie Fay even to deal with that class of claims in a plan.

■ The claimants next argue that the best interests of both Leslie Fay and its creditors would be served by adjourning the hearing to conserve judicial resources and reduce the risk of inconsistent rulings. I have already dealt with the harm which will accrue to Leslie Fay from the adjournment requested. An adjournment until resolution of the dismissal motion will not advance matters in this court at all. Even an adjournment to permit a jury trial as against the individual defendants will not resolve Leslie Fay's liability, for, as the District Court has already determined, Leslie Fay is not a necessary and indispensable party to an action against its officers and directors in their individual capacities. Thus, an adjournment would not conserve judicial resources, but only delay the time when they are expended, and with attendant prejudice to Leslie Fay's estate.

■ The concern with so-called inconsistent rulings is actually a fear by the claimants that if they lose in this court, they will be collaterally estopped in the District Court. Whether or not they would be so estopped is to be determined by the District Court. But it must be remembered that the claimants were not haled into this court through an adversary proceeding commenced against them. Rather, they voluntarily invoked this court's jurisdiction and did so prior to commencing suit in the *Falbaum* action. Even more so than in *Hooker*, the claimants' request for a stay is inimical to the statutory bankruptcy scheme and the orderly administration of the bankruptcy estate. The *Hooker* court refused to set the "dangerous precedent" of "requir[ing] a bankruptcy court to stay the effect of its bar orders to preserve the jury-trial rights of any creditor from

whom a debtor or trustee sought to recover preferences." 937 F.2d at 839. The danger to the bankruptcy scheme is even greater here, where the adversary proceeding is not instituted by the debtor, as in *Hooker*, but by the claimants against parties which the claimants urge and the District Court has determined are separate and distinct from Leslie Fay. Simply put, those filing proofs of claim should not be able to halt the bankruptcy process because they wish first to try their claims against defendants other than the debtors, and particularly is this so when the lawsuit is commenced after the proofs of claim are filed. Thus, I see no reason to cause the detriment to the estate and the bankruptcy process which surely would be occasioned by the stay requested by the claimants.

Accordingly, the motion for a stay of the objections to the claimants' proofs of claim is denied. SETTLE ORDER consistent with this decision.