**In re PINNACLE CORPORATION,
Debtor.**

**Pinnacle Corporation, Plaintiff,**

**v.**

**Long–term Capital Management,
L.P., Defendant.**

**Bankruptcy No. 95–51487.
Adversary No. 99–5060.**

United States Bankruptcy Court,
D. Connecticut,
Bridgeport Division.

July 22, 1999.

David S. Rosner, Kasowitz, Benson, Torres & Friedman LLP, New York City, James Berman, Zeisler & Zeisler, P.C., Bridgeport, CT, for Pinnacle.

Robert C. Shenfeld, Thomas A. Arena, Milbank, Tweed, Hadley & McCloy, New York City, for LTCM Osprey, LLC.

Charles W. Pieterse, Whitman Breed Abbot & Morgan, LLP, Greenwich, CT, Eric A. Henzy, Reid and Riege, P.C., Hartford, CT, for Long–Term Capital Management, L.P.

## ORDER ON DEBTOR'S MOTION FOR ABSTENTION

ALAN H.W. SHIFF, Chief Judge.

Pinnacle Corporation moves for mandatory, or in the alternative, discretionary abstention of the above adversary proceeding.

## BACKGROUND

The parties have submitted a joint stipulation of facts which in relevant part provides the factual predicate for this order. The full text of the stipulation is attached as an Appendix.

Pinnacle commenced this chapter 11 case on October 12, 1995. Its sole asset was and is a building known as Osprey House, located at One East Weaver Street, Greenwich, Connecticut (the "Property"). On December 31, 1996, Pinnacle as landlord and LTCM L.P. as tenant executed a lease which, at Pinnacle's request, was approved by this court's March 4, 1997 order.

On January 20, 1998, Pinnacle filed adversary proceeding 98–5009, (the "Multi–Count Action") against LTCM L.P. and others, alleging that Pinnacle had been fraudulently induced to lease the Property to LTCM L.P. and that LTCM L.P. breached the lease and a related agreement to negotiate financing. Other allegations related to tortious interference, unjust enrichment, failure to pay rent, and that LTCM L.P. and L.T.C.M. Osprey, its sister corporation, conspired to deprive

Pinnacle of its ownership of the Property. The Multi–Count Action sought, *inter alia,* rescission of the lease. In its August 13, 1998 answer, LTCM L.P. asserted counterclaims seeking, *inter alia,* determinations that the lease was valid and enforceable but that rent was not due because of Pinnacle's failure to make certain structural repairs.

On April 13, 1999, following service of a Notice to Quit, *see* Conn. Gen.Stat. § 47a–23a, Pinnacle commenced an eviction proceeding against LTCM L.P. in the Connecticut Superior Court at Norwalk, Housing Session ("Summary Process Action"). The Summary Process Action involved the same lease and in essence asserted the same allegations as the Multi–Count Action. That is, Pinnacle again alleged that LTCM L.P. materially breached the lease by failing to pay rent; "surreptitiously bought the mortgage on the [Property] (becoming [Pinnacle's] principal creditor);" and that it "acquired Pinnacle's mortgage in order to combine it with its tenancy, eliminate Pinnacle, and succeed to ownership of the Property." *Complaint for Eviction* at ¶¶ 3, 17. Anticipating LTCM L.P.'s response, Pinnacle also asserted that "the alleged 'structural problem' has in no way interfered with [LTCM L.P.]'s use and enjoyment ...." *Id.* at ¶¶ 15, 22.

On April 15, 1999, LTCM L.P. removed the Summary Process Action to the United States District Court, *see* Rule 9027(a), F.R.Bankr.P. On April 29, the district court referred that action, case no. 3–99–cv–700(JCH), to this court where it is docketed as the instant proceeding.

## DISCUSSION

### *Mandatory Abstention*

Abstention is mandated when:

[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (1994). The party seeking mandatory abstention has the burden of satisfying each of those elements. *See, e.g., In re Midgard,* 204 B.R. 764, 778 (10th Cir. BAP 1997). The analysis here focuses on whether this is a core proceeding.

A bankruptcy court has the authority to "hear and determine ... all core proceedings arising under title 11, or arising in a case under title 11 ...." 28 U.S.C. § 157(b)(1). Section 157(b)(2) provides a non-exhaustive list of core proceedings. "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *CoreStates Bank v. Huls America, Inc.,* 176 F.3d 187, 196 (3rd Cir.1999), *quoting Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.),* 72 F.3d 1171, 1178 (3rd Cir.1996). The phrase "by its nature" has been construed to mean the particular facts that form the contours of the proceeding rather than its generic nature. *See In re Guild & Gallery,* 72 F.3d at 1178; *In re Passodelis,* 234 B.R. 52, 61 (Bankr.W.D.Pa.1999); *In re Manshul Construction Corp.,* 225 B.R. 41, 46 (Bankr. S.D.N.Y.1998). Put another way, a core proceeding arises "under" title 11 when the relief sought is based on a right created by title 11. A matter arises "in" title 11 when the gravamen of the proceeding arises in the particular bankruptcy case and would have no existence outside of bankruptcy. *In the Matter of National Gypsum Co.,* 118 F.3d 1056, 1062 (5th Cir.1997)(same); *Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home),* 144 B.R. 951, 955 (S.D.N.Y.1992)(same). *See also* 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][i] and [iv] (15th

ed. 1998 Supp.) (similarly distinguishing 'arising under' from 'arising in'); Thomas B. Bennett, REMOVAL, REMAND, AND ABSTENTION RELATED TO BANKRUPTCIES, 27 Cumb. L.Rev. 1037, 1044 (1996–1997) (discussing legislative history of § 1334). Because the jurisdictional reach of a bankruptcy court is essential to the efficient administration of bankruptcy proceedings, core jurisdiction is construed broadly. *S.G. Phillips Constructors, Inc. v. City of Burlington, VT (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir.1995).

■ Pinnacle argues that the instant proceeding is non-core because "this action could have been asserted whether or not Pinnacle was in bankruptcy." *Pinnacle's June 17, 1999 Supplemental Memorandum* at 5. The thrust of that argument is that the lease is of no consequence, because the Property will be leased regardless of whether LTCM L.P. is evicted, and Pinnacle's reorganization is not dependent upon whether LTCM L.P. or some other tenant leases the Property. That argument overlooks the context under which the lease must be considered in the resolution of whether the instant proceeding is a core proceeding, i.e., whether this court is required to abstain. In that context, an analysis of the lease is essential to the determination of whether the instant adversary proceeding is a core proceeding.

It is determined that this is a core proceeding because it arose in this case. That is, the gravamen of the proceeding involves the validity of a lease which was created during this bankruptcy case and became viable by this court's March 4, 1997 order which approved it. *See* 11 U.S.C. § 363(b); *Stipulation of Facts* at ¶ 23; *Order Granting Application for Approval of Amendment to Exclusive Listing Agreement with the Galbreath Company of Connecticut, Inc.*, Dkt. # 256, *In re Pinnacle*, case no. 95–51487 (approving under § 327(a) an amendment to the exclusive listing authority of Pinnacle's listing agent, which included the agreement to lease to

LTCM L.P.). That conclusion is buttressed by the observation that the Multi-Count Action, which Pinnacle has always referred to as a core proceeding, *see Amended Complaint* at ¶¶ 5–6, alleged an identical cause of action, i.e., nonpayment of rent. *Id.* at ¶ 50.

Apart from the conclusion that the instant proceeding *arises in* a case under title 11, it also *arises under* title 11 because it invokes substantive rights provided by title 11. Those rights include 28 U.S.C. §§ 157(b)(2)(M) and (O), which provide respectively that "orders approving the use or lease of property," *see also* 11 U.S.C. § 363(b), and "other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship . . ." are core proceedings.

Pinnacle also contends that this adversary proceeding presents the paradigm case for abstention because: (1) abstention is required by the Supreme Court's holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); (2) evictions are traditionally left to the state courts;[1] and (3) the lease prohibits LTCM L.P. from challenging the forum of Pinnacle's choosing, i.e. the Connecticut state court.

Pinnacle's reliance on *Marathon* is misplaced. The Second Circuit has discussed *Marathon Pipe Line's* continuing, but limited, applicability in cases where mandatory abstention is sought:

> In *Marathon*, the Court held that Article III of the Constitution prohibited the bankruptcy court from adjudicating a prepetition claim by the debtor in an adversary proceeding against a nonparty to the bankruptcy because bankruptcy judges 'do not enjoy the protections constitutionally afforded to Art[icle] III judges,' *Marathon*, 458 U.S. at 60, [102 S.Ct. 2858], and the bankruptcy court was not a forum having 'the essential

---

1. That observation is irrelevant to the issue of whether this court is required to abstain.

attributes of the judicial power.' *Id.* at 87, [102 S.Ct. 2858].

In response to the Supreme Court's decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, which established the core/non-core distinction to which we have referred. *In re Arnold Print Works, Inc.,* 815 F.2d 165, 166–67 (1st Cir.1987) (Breyer, J.). In doing so, Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and intended that the "core" jurisdiction would be construed as broadly as possible subject to the constitutional limits established in *Marathon. Id.* at 168. Since then, both the Supreme Court and this court have concluded that the *Marathon* holding was a narrow one and have broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments...

[A] crucial factor distinguishing *Marathon* ... is that in *Marathon,* the state common-law claim arose prepetition, but the debtor brought it postpetition in bankruptcy court against a defendant who had not filed a proof of claim and had no other connection with the bankruptcy. *See In re Manville,* 896 F.2d at [1384,] 1389 [(2nd Cir.1990)]. The defendant was thus involuntarily subjected to having the debtor's state law claim against it decided by an Article I judge. It was this combination of circumstances that led the Supreme Court to hold that the defendant was entitled to adjudication of its claims by an Article III court. *Id.*

*S.G. Phillips Constructors, Inc. v. City of Burlington, VT (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 705–706 (2d Cir.1995).

Even if the constitutional issue raised by *Marathon* were applicable, the consequence would not be mandatory abstention, but rather the withdrawal of the reference to this court. But, as noted, the district court has referred the instant proceeding to this court.

 The distinction between core and non-core does not end the mandatory abstention analysis. A movant seeking abstention pursuant to § 1334(c)(2) has the initial burden of showing the proceeding could be timely adjudicated in state court. *See Neuman v. Goldberg,* 159 B.R. 681, 688 (S.D.N.Y.1993). "A naked assertion that the matter can be timely adjudicated in the state court, without more, is insufficient to satisfy this requirement." *In re Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Devel. Fund Co., Inc.,* 62 B.R. 873, 878 (Bankr.S.D.N.Y. 1986).

 As the Bankruptcy Appellate Panel for the Tenth Circuit observed in *In re Midgard,* 204 B.R. 764, 778, timeliness is relative:

The phrase "timely adjudication" is not defined in the Bankruptcy Code. Courts interpreting this phrase have focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case.... This focus is in accord with the fact that Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.

(Citations and internal quotation marks omitted).

Mandatory abstention, even if this were non-core, is not warranted because nothing in the stipulation or elsewhere in the record supports a finding that the Summary Process Action can be timely adjudicated relative to its adjudication here. *In re Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Develop. Fund Co.,* 62 B.R. 873, 878 (Bankr.S.D.N.Y. 1986).

*Discretionary Abstention*

■ Section 1334(c)(1) authorizes a bankruptcy court, in its discretion, to abstain from hearing a core proceeding. *S.G. Phillips Constructors, Inc. v. City of Burlington, VT (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 708 (2nd Cir. 1995). Pinnacle relies on a forum selection clause contained in the lease to support its argument that this court should abstain. The lease provides:

> [LTCM L.P., as tenant] waives [its] rights, if any, to assert a counterclaim, in any summary process action brought by Landlord against Tenant, and Tenant agrees to assert any such claim against Landlord only by way of a separate action or proceeding.
>
> . . .
>
> All disputes arising out of or relating to this Lease and all actions to enforce this Lease shall, to the extent legally possible, be adjudicated in the state courts of Connecticut or the federal courts sitting in Connecticut and Tenant hereby irrevocably submits to the jurisdiction of such courts in any suit, action or proceeding arising out of or relating to this Lease or in any action to enforce this Lease . . . .
>
> . . .
>
> Provided that service of process is effected upon Tenant or Landlord in one of the manners hereafter specified or as otherwise permitted by law, Tenant and Landlord irrevocably waives, to the fullest extent permitted by law, and agrees not to assert, by way of motion or defense or otherwise (a) any objection which it may have or may hereafter have to the laying of the venue of any such suit, action or proceeding brought in such a court as is mentioned in [the above section] or (b) any claim that such suit, action or proceeding brought in such a court has been brought in an inconvenient forum.

*Joint Stipulation of Facts at ¶¶ 8, 9, 10.*

■ The applicability of the lease's forum selection clause assumes that the lease is valid and enforceable, a conclusion which is challenged by LTCM L.P., and to some extent, by Pinnacle. That aside, a forum selection clause, absent any indication that its enforcement will be "unreasonable or unjust," will ordinarily be upheld. *See, e.g., Seward v. Devine,* 888 F.2d 957, 962 (2nd Cir.1989). That result would be unreasonable in this case because the enforcement of the forum selection clause would put the state court in the position of determining whether the lease, which is property of this bankruptcy estate, is valid, and defining what the rights and obligations of the parties are as a consequence of that determination. Since those issues will also be the responsibility of this court in the context of the Multi–Count Action, a decision by the state court in the Summary Process Action invites inconsistent determinations. Abstention would therefore impair this court's jurisdiction over the administration of the bankruptcy estate. Accordingly, for the same reason that mandatory abstention is inapplicable, this court will not exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1), and it is

SO ORDERED.

## APPENDIX

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In re PINNACLE CORPORATION,
Debtor.

PINNACLE CORPORATION, Plaintiff,

v.

LONG TERM CAPITAL
MANAGEMENT, L.P.,
Defendant.

Case No. 95–51487

Adv.Pro. No. 99–5060

June 17, 1999

*STIPULATION OF UNDISPUTED FACTS IN CONNECTION WITH DEBTOR'S MOTION FOR ABSTENTION AND REMAND*

Plaintiff, Pinnacle Corporation ("Pinnacle" or the "Debtor"), and defendant Long

Term Capital Management, L.P. ("LTCM"), by their undersigned attorneys, respectfully submit this stipulation of undisputed facts in connection with the Debtor's Motion for mandatory or permissive abstention and remand of this action to the Housing Session of the Superior Court for the Judicial District of Norwalk/Stamford at Norwalk, Connecticut.

## I. *The Parties*

1. Pinnacle is a Connecticut Corporation.

2. Pinnacle is under the protection of title 11, United States Code, before the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court").

3. Pinnacle's sole asset is the building known as Osprey House at One East Weaver Street, Greenwich, Connecticut (the "Property").

4. LTCM is a Delaware limited partnership.

## II. *The Lease*

5. On December 31, 1996, Pinnacle, as landlord, and LTCM, as tenant, executed a lease of the Property (the "Lease").

6. The Lease provides that LTCM shall pay to Pinnacle "Fixed Rent" of $1,490,490 per year, payable in equal monthly installments of $124,207.50 in advance on the first day of each month. *Lease,* § 4.1(a). The Lease provides that LTCM shall pay "Additional Rent" of all other sums as shall become due and payable under the Lease. *Lease,* § 4.1(b). The Lease provides that LTCM shall pay interest on unpaid and overdue Fixed and Additional Rent. *Lease,* §§ 4.1(c), 14.4.

7. The Lease provides for a "Rent Commencement Date." The Lease defines the "Rent Commencement Date" as four months from the Approval Date under Section 38.2. Lease § 1.1(i). Section 38.2 of the Lease defines Approval Date as "[t]he date upon which all the Bankruptcy Approvals have been obtained and are fi-

nal and nonappealable, or all terminations rights have lapsed and such escrow account has been fully funded". Lease § 38.2(c). The Bankruptcy Court issued orders approving the Lease and related financing on March 4, 1997, and these orders became final and non-appealable on March 17, 1997.

8. Section 24.3 of the Lease provides that LTCM, as tenant:

waives [its] rights, if any, to assert a counterclaim, in any summary process action brought by Landlord against Tenant, and Tenant agrees to assert any such claim against Landlord only by way of a separate action or proceeding.

9. Section 34.1(c) of the Lease provides that:

All disputes arising out of or relating to this Lease and all actions to enforce this Lease shall, to the extent legally possible, be adjudicated in the state courts of Connecticut or the federal courts sitting in Connecticut and Tenant hereby irrevocably submits to the jurisdiction of such courts in any suit, action or proceeding arising out of or relating to this Lease or in any action to enforce this Lease . . . .

10. Section 34.1(d) of the Lease provides that:

Provided that service of process is effected upon Tenant or Landlord in one of the manners hereafter specified or as otherwise permitted by law, Tenant and Landlord irrevocably waives, to the fullest extent permitted by law, and agrees not to assert, by way of motion or defense or otherwise (a) any objection which it may have or may hereafter have to the laying of the venue of any such suit, action or proceeding brought in such a court as is mentioned in this Section 34.1 or (b) any claim that such suit, action or proceeding brought in such a court has been brought in an inconvenient forum.

11. Section 38.4(a) of the Lease provides:

Tenant's structural engineer (Hallama, McDonald & Van der Poll) has indicated that there are certain structural deficiencies with respect to the property relating to water infiltration through the structure (the "Water Structural Concern"). Tenant's roof engineer (Gottfried, Inc.) has indicated that there is a deficiency in the existing roof (the "Roof Concern"). Landlord hereby agrees to cause its structural engineers and roofing experts to promptly review the Water Structural Concern and the Roof Concern, and Landlord hereby agrees to cause the remedying of any such deficiencies, such remedying to be in the manner as recommended by Landlord's structural engineers and roofing experts (the "Initial Structural Repairs") subject to Tenant's reasonable satisfaction. The completion of such Initial Structural Repairs shall be performed by Landlord to Tenant's reasonable satisfaction.

12. Section 38.4(b) of the Lease provides, in part:

[s]uch Initial Structural Repairs shall be made at Tenant's expense (unless Landlord, in its sole discretion, determines to fund such costs itself), subject to recoupment as described below.

13. Section 38.4(d) of the Lease provides:

[s]ubject to adjustment and deferral as hereinafter provided, [LTCM] will have its rent reduced for the first 60 rent paying months by the "Repair Factor". The Repair Factor will be that amount needed to amortize the full costs of such Initial Structural Repairs over 60 months.

14. Under the Lease, LTCM has a free rent period for the first four months of the Lease.

15. Section 38.4(c) of the Lease provides: "[LTCM's] four month free rent period from the Effective Date of the Lease will be extended day-to-day as needed to complete such Initial Structural Repairs".

16. Section 38.4(g) of the Lease provides that:

Tenant agrees to a 120 month rent paying period of the initial Lease, notwithstanding any free rent period (including extensions of the free rent period of any delays in completion of the Initial Structural Repairs).

17. LTCM took possession of the Property in March 1997.

18. LTCM has enjoyed the exclusive use and possession of the Property since that time.

19. LTCM has not paid any rent under the Lease (other than a one month deposit made on the date LTCM signed the Lease in 1996).

20. LTCM contends that under the Lease its obligation to pay rent has not arisen due to the Debtor's failure to satisfy its contractual obligation to complete the Initial Structural Repairs as a condition precedent to such obligation to pay rent.

21. Pinnacle contends that its repair of a water leak (defined as "Initial Structural Repairs" under the Lease) is not a condition precedent to LTCM's duty to pay rent under the Lease. Pinnacle further contends that even if repair of the water leak constitutes a condition precedent to LTCM's obligation to pay rent, LTCM precluded the occurrence of the condition, rendering absolute its duty to pay rent.

III. *The Order Approving The Lease*

22. In January 1997, the Debtor filed a motion to obtain the Bankruptcy Approvals (the "Approval Motion").

23. An order (the "Order") approving the Lease was entered by this Court on March 4, 1997.

24. The Order provides that "the Debtor's proceeding with its Motion For Authority To Enter Into Lease and this Order are without prejudice to all claims between the Debtor and LTCM, if any, including, without limitation, all claims arising under the Lease and arising from

LTCM's purchasing Lacbil's claims against the Debtor."

25. No party in interest filed an appeal of the Order.

26. No party in interest filed a motion pursuant to Rule 60(b) to vacate or otherwise modify the Order.

## IV. *The Adversary Proceeding*

27. In February, 1998, Pinnacle commenced an adversary proceeding against, among others, LTCM (the "Adversary Proceeding").

28. In the Adversary Proceeding, Pinnacle asserts the following eleven counts against the defendants:

| Count | Defendant | Claim |
|---|---|---|
| I | LTCM | Fraudulent Inducement and Rescission of Lease |
| II | LTCM | Breach of Agreement to negotiate |
| III | LTCM | Breach of Lease |
| IV | LTCM and LTCM Osprey | Absence of Good faith under § 1126(e) of the Code |
| V | LTCM and LTCM Osprey | Equitable Subordination |
| VI | LTCM Osprey | Disallowance or reduction of LTCM Osprey's claim |
| VII | LTCM | Failure to Pay Rent and Termination of Lease |
| VIII | LTCM | Unjust Enrichment |
| IX | Paribas and Lacbil | Tortious Interference with Contract |
| X | Paribas and Lacbil | Aiding and Abetting |
| XI | LTCM, LTCM Osprey Paribas and Lacbil | Violation of Connecticut Unfair Trade Practices Act |

29. In the Amended Complaint, Pinnacle asserts that the Adversary Proceeding, including the Debtor's cause of action for damages and termination of the Lease for nonpayment of rent, is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (O) and that this Court has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). *See* Amended Complaint ¶¶ 5–6.

30. On August 13, 1998, in the Adversary Proceeding, LTCM filed its Answer to the Amended Complaint., asserting 15 affirmative defenses and 11 counterclaims against the Debtor (the "LTCM Counterclaims").

31. The LTCM Counterclaims are:

(a) First Counterclaim: declaratory judgment that the Lease is valid and enforceable;

(b) Second Counterclaim: the Debtor's anticipatory breach of the Lease;

(c) Third Counterclaim: breach of the Lease for failure to obtain requisite consent and failure to make the Water Structural Repairs;

(d) Fourth Counterclaim: Debtor's breach of the implied duty of good faith for frustrating the Lease;

(e) Fifth Counterclaim: unjust enrichment for the over $4 million in repairs that LTCM allegedly made to the Property;

(f) Sixth Counterclaim: Debtor's fraud;

(g) Seventh Counterclaim: vexatious litigation;

(h) Eighth Counterclaim: violation of Conn. Gen.Stat. § 42–110b(a) (deceptive act);

(i) Ninth Counterclaim: violation of Conn. Gen.Stat. § 42–120b(a) (unfair act);

(j) Tenth Counterclaim: allowance of post-petition administrative claim under 11 U.S.C. §§ 503, 507 and 726;

(k) Eleventh Counterclaim: conversion or dismissal of the bankruptcy case under 11 U.S.C. § 1112(b).

32. The Debtor has not filed a reply to any of the LTCM Counterclaims.

33. As and for its First Affirmative Defense, LTCM asserted that "None of the claims asserted against LTCM in the Amended Complaint (the "Claims") are 'core' proceedings. 28 U.S.C. § 157(b). Accordingly, this Court lacks subject matter jurisdiction over the Claims and this Court should abstain from hearing them. 28 U.S.C. §§ 157(a),(b)."

34. As and for its Fourteenth Affirmative Defense, LTCM asserted that "LTCM does not consent to this Court entering a final order with regard to the Claims."

### V. *The Eviction Action*

35. On April 8, 1999, Pinnacle served on LTCM a Notice to Quit pursuant to Conn. Gen.Stat. § 47a–23a.

36. The time designated in the Notice to Quit passed.

37. On April 13, 1999, Pinnacle commenced a summary process action by serving a Complaint seeking a judgment for possession of the Property upon LTCM, which was returned to the Superior Court, Housing Session, at Norwalk, Connecticut on or about April 14, 1999 (the "Summary Process Action").

38. In the Summary Process Action, Pinnacle alleges that LTCM's nonpayment of rent is a material breach of the Lease entitling Pinnacle immediately to terminate the Lease and to evict LTCM.

39. In the Summary Process Action, Pinnacle does not seek damages.

40. In the Summary Process Action, Pinnacle does not seek disallowance or reduction of LTCM Osprey's mortgage on the Property.

### VI. *Removal*

41. On or about April 15, 1999, LTCM removed the Summary Process Action to District Court, and requested that the matter be referred to the Bankruptcy Court.

42. LTCM has not filed an answer to the Summary Process Action; LTCM filed a motion to strike redundant, immaterial, impertinent or scandalous matter under FRCP 12(f), which motion is pending.

43. Thereafter, the Summary Process Action was referred to this Court.

### VII. *Abstention*

44. Pinnacle filed a motion for abstention on April 26, 1999.

45. The allegations of the two eviction counts set forth in the Summary Process Action are allegedly based upon Connecticut General Statutes § 47a–23a et seq.